**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chee Vang, et al., | No. CV-18-03870-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Mutual Automobile Insurance Company, et al., | |
| Defendants. | |

## INTRODUCTION

The plaintiffs in this putative class action bought car insurance from State Farm Mutual Automobile Insurance Company ("State Farm"), sustained injuries in car accidents, and then visited the same chiropractor. This chiropractor, however, didn't receive timely payment from State Farm because he had been flagged by an internal State Farm anti-fraud program that sought to identify "which doctors cause State Farm to pay the most in automobile-accident bodily-injury claims." (Doc. 20 ¶ 59 [amended complaint].) According to Plaintiffs, this program is actually "an elaborate scheme to avoid paying claims by racial and ethnic minorities and members of immigrant communities across the United States." (Doc. 24 at 1.) Accordingly, Plaintiffs seek to assert anti-discrimination claims against State Farm under the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and under 42 U.S.C. § 1981.[1]

---

[1] The amended complaint also asserted a claim under Title VI of the Civil Rights Act of 1964 (Doc. 20 ¶¶ 209-24), and identified an additional defendant, State Farm Fire and Casualty Company (Doc. 20 ¶ 22), but Plaintiffs now concede the Title VI claim and the

Notably, all of the plaintiffs reside in Minnesota. That's also where the car accidents occurred, where the chiropractor is based, and where the State Farm claims specialists were located at the time they made the challenged decisions to delay payment. The only connections between the conduct at issue in this case and the state of Arizona are that (1) State Farm used an Arizona "mail drop" during the time period in question and (2) State Farm reassigned some of the claims to an Arizona-based claims specialist in September 2018, which is after the key events occurred.

State Farm has now filed a motion seeking dismissal or, alternatively, a transfer of venue under 28 U.S.C. § 1631. (Docs. 22, 24, 26.)[2] As explained below, the Court will grant the motion to dismiss because it lacks personal jurisdiction over State Farm. The company isn't subject to general personal jurisdiction in Arizona, even though it maintains a large facility in Arizona and has thousands of Arizona employees, because it can't be said to "be home" in Arizona, and it isn't subject to specific personal jurisdiction because Plaintiffs can't demonstrate a sufficient nexus between any of State Farm's conduct in Arizona and their alleged injuries. Given these conclusions, the Court need not reach State Farm's alternative dismissal arguments under Rule 12(b)(6).

**BACKGROUND**

Plaintiffs are State Farm policyholders residing in Minnesota. (Doc. 20 ¶¶ 16–19.) Each was injured in an automobile accident that occurred in Minnesota. (*Id.* ¶¶ 129, 142, 155.) Each received treatment from chiropractor Jer Lee, D.C. at the Chiro Health Clinic in Minnesota, as well as from other Minnesota-based providers. (*Id.* ¶¶ 130–31, 143–44, 157–59.) Each alleges State Farm delayed payment using a scheme targeting racial and ethnic minorities for sham fraud investigations. (*Id.* ¶¶ 1–9, 82–99, 129–73.)

On November 6, 2018, Plaintiffs filed a complaint alleging that State Farm systematically targets healthcare providers serving minority populations and, in turn,

---

other defendant may be dismissed. (Doc. 24 at 1 n.1.)

[2] The parties have requested oral argument but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

knowingly discriminates against minority insureds like themselves. (*See* Doc. 1.)

On December 18, 2018, State Farm moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim, or alternatively, to transfer under 28 U.S.C. § 1631. (Doc. 18.)

On January 8, 2019, Plaintiffs filed an amended complaint. (Doc. 20.)

On January 22, 2019, State Farm filed the motion now pending before the Court. (Doc. 22.)

**ANALYSIS**

a. <u>Rule 12(b)(2) Standard</u>

Federal courts generally have jurisdiction over non-resident defendants to the extent allowed by the states in which they sit. Fed. R. Civ. P. 4(k); *Walden v. Fiore*, 571 U.S. 277, 283 (2014). In Arizona, the jurisdictional limit of the state long-arm statute is coextensive with that of the United States Constitution. Ariz. R. Civ. P. 4.2(a). Therefore, the Court need only determine whether exercising personal jurisdiction here would comport with federal due process. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017).

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Such contacts may give rise to either general or specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017).

General (or "all-purpose") jurisdiction allows a court to hear any claim against that defendant, irrespective of the underlying claim's connection to the forum state. *Id.* at 1780. A court has general jurisdiction where a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). For an individual, this typically refers to one's domicile; for a

corporation, the "paradigm all-purpose forums" include its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction beyond these locations, although possible, would be "an exceptional case." *Id.* at 139 n.19.

Specific (or "case-based") jurisdiction allows a court to hear a particular case that arises out of or relates to the defendant's contacts with the forum. *Id.* at 127 (quotation omitted). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden,* 571 U.S. at 283–84 (citation and internal quotation marks omitted). That is, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284; *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780 ("In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'") (citation omitted). Mere contact with a plaintiff will not suffice. *Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

In either case, "the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff need only make a *prima facie* showing of jurisdictional facts to avoid dismissal. *Id.* The court must accept all uncontroverted statements in the complaint as true while resolving any affidavit-based factual conflicts in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

B. <u>General Jurisdiction</u>

State Farm is not subject to general jurisdiction in Arizona. General jurisdiction is governed by "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger,* 374 F.3d at 801. There is, however, no "precise checklist" or "definitive litany of factors" by which courts evaluate general

jurisdiction. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

Here, Plaintiffs argue that State Farm's purchase of a multimillion-dollar building complex, employment of several thousand workers, financial support of local organizations, and authorization to do business in Arizona render it "essentially at home" here. (Doc. 24 at 4.) As explained below, this argument is unavailing.

It is helpful to begin by stating the obvious: State Farm was incorporated and keeps its principal place of business in Illinois. Plaintiffs do not dispute this fact; instead, they suggest this is a case in which general jurisdiction extends beyond these "paradigm all-purpose forums." (Doc. 24 at 3-4.) The Court disagrees. Although the Supreme Court noted in *Daimler* that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums" (*see* 571 U.S. at 137), what the Court said next is just as significant. Rejecting the argument that general jurisdiction should be found "in every State in which a corporation engages in a substantial, continuous, and systematic course of business," the Court held that such a view was "unacceptably grasping." *Id.* at 137-38. General jurisdiction, the Court explained, exists to "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 137. It follows that general jurisdiction beyond these specific, easily identifiable locations remains an "exceptional" rarity. *Id.* at 139 n.19. *See also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) ("Only in an 'exceptional case' will general jurisdiction be available anywhere else.") (citation omitted).

In *Daimler*, the Supreme Court identified *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as an example of such an exceptional case. *See* 571 U.S. at 139 n.19. There the Court concluded that a Philippines-based corporation was subject to general jurisdiction in Ohio because the company temporarily relocated its principal place of business to Ohio during the Japanese occupation of the Philippines. *Perkins*, 342 U.S. at 447–48. Similar circumstances were present in the Ninth Circuit's unpublished decision in *Delphix Corp. v. Embarcadero Technologies, Inc.*, 749 Fed. App'x 502 (9th Cir. 2018),

which Plaintiffs cite in their opposition. The defendant there, a Delaware corporation that had been headquartered in California "for at least two decades" was purchased by a Texas-based company. *Id.* at 506. The court concluded this buyout "did not instantaneously dissolve" general jurisdiction in California, in part because the company continued representing that its headquarters were in California following the acquisition. *Id.*

This case isn't remotely similar to *Perkins* or *Delphix*. Although State Farm does business in Arizona and maintains an office and staff in Arizona, such conduct is not inherently exceptional. *Cf. Ranza*, 793 F.3d at 1069–70 (selling products and employing personnel in forum state are insufficient on their own to establish general jurisdiction); *see also Daimler*, 571 U.S. at 158 (Sotomayor, J., concurring) ("[T]he majority holds today that Daimler is not subject to general jurisdiction in California despite its multiple offices, continuous operations, and billions of dollars' worth of sales there."). District courts throughout this circuit agree. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1141 (S.D. Cal. 2018) ("[T]he presence of offices in the forum state does not, by itself, render a defendant subject to general jurisdiction."); *Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1045–46 (N.D. Cal. 2018) (finding no general jurisdiction even accepting plaintiff's allegations concerning employee numbers, store operations, product design and sales, and operational oversight in forum state); *Dillon v. Avis Budget Grp., Inc.*, 2018 WL 3475529, *4 (C.D. Cal. 2018) (rejecting general jurisdiction argument based on company's operation of "so many physical [car] rental locations" in forum state); *Buckles v. Green Tree Serv.*, 2016 WL 3360959, *3 (D. Nev. 2016) (doing business in forum state insufficient to support general jurisdiction).

In short, State Farm's Arizona contacts paint only part of the general-jurisdiction picture. *Daimler*, 571 U.S. at 139 n.20 ("[T]he general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.'") (citation omitted). Due process demands a broader assessment. It requires a comparative analysis, including "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20; *accord Ranza*, 793 F.3d at 1070 ("[T]he general jurisdiction

inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home."). Plaintiffs omit this assessment. Instead, they focus solely on State Farm's in-state activities. Though indisputably substantial and continuous, the relative significance of these contacts remains uncertain at best. The one comparison Plaintiffs do offer—that 22 percent of State Farm's national workforce resides in Arizona (Doc. 22 at 4)—finds no support in the affidavit accompanying Plaintiffs' brief. (Doc. 25.) In fact, the correct figure appears to be closer to 11 percent, which is slightly higher than the percentage working from State Farm's Georgia office (10 percent) and lower than the percentage working from its Texas office (12 percent). (Doc. 26-1, Decl. of Erik Bogren ¶ 2.) Thus, the Court cannot conclude State Farm is "at home" in Arizona. General jurisdiction is accordingly absent.

C. Specific Jurisdiction

Plaintiffs' arguments concerning specific jurisdiction fare no better. The Ninth Circuit assesses specific jurisdiction using the following three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to show it would still be unreasonable for the court to exercise jurisdiction. *Id.* at 1211-12.

The parties begin by disputing the proper form of the court's jurisdictional analysis. Courts routinely apply the "purposeful availment" test to contract claims and the "purposeful direction" test to tort claims. *Id.* at 1212. Here, Plaintiffs argue the purposeful availment test is applicable, citing their underlying insurance contracts with State Farm. (Doc. 22 at 5.) State Farm disagrees, arguing the purposeful direction test applies because

Plaintiffs are asserting tort-based discrimination claims. (Doc. 26 at 5–6.) Although the Court tends to believe State Farm has the better side of this argument—the causes of action asserted in the amended complaint sound in tort, and Plaintiffs have already pursued separate proceedings to obtain contract benefits (Doc. 20 ¶¶ 137-39, 154, 167-68)—its resolution is ultimately unnecessary because Plaintiffs lose regardless of which test is applied.

Plaintiffs argue that State Farm purposefully availed itself of the privilege of doing business in Arizona by receiving authorization to do business here, purchasing a multimillion-dollar office complex in Tempe, obtaining favorable state tax breaks, and buying naming rights to the Arizona Cardinals stadium. (Doc. 24 at 6.) As for purposeful direction, Plaintiffs contend that State Farm directed its discriminatory policy toward Arizona and that the company's Arizona presence was pivotal to the policy's implementation. (*Id.*) Yet these actions lack a sufficient connection to Plaintiffs' claims. Indeed, Plaintiffs' conclusory argument that their claims "arise out of and are related to State Farm's Arizona-related activities" fails to explain how those contacts are indispensable to Plaintiffs' alleged injuries. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) ("An action arises out of contacts with the forum if, 'but for' those contacts, the cause would not have arisen.").

For example, State Farm's use of a Phoenix post office box as its return address in the communications a few plaintiffs received scarcely tethers Plaintiffs' claims to Arizona. (Doc. 20 ¶¶ 134–35, 147–48.) State Farm argues that the box merely "served as a mail drop for State Farm property and casualty claims in various locations" (Doc. 22 at 8) and, in support of that claim, has submitted an affidavit explaining that letters received at this address were simply scanned and forwarded to the appropriate claim specialist. (Doc. 22-1 ¶ 8.) Plaintiffs offer no evidence contesting this contention. (Doc. 24 at 6.) The Court accordingly finds no nexus between Plaintiffs' discrimination claims and State Farm's Phoenix mail routing operation.

Nor does State Farm's reassignment of some claims to an Arizona-based claim

specialist in September 2018 thread the jurisdictional needle. All of the key events in this case—the car accidents, chiropractor visits, submission of claims, and receipt of delay letters—occurred before the reassignment. (Doc. 20 ¶¶ 129–168.) This chronology dooms Plaintiffs' position. *Farmers Ins. Exch.*, 907 F.2d at 913 ("Only contacts occurring prior to the event causing the litigation may be considered.").

The bottom line is that Plaintiffs are residents of Minnesota, suffered injuries from automobile accidents in Minnesota, received treatment in Minnesota from providers in Minnesota, submitted insurance claims in Minnesota, and, until September 2018, had those claims assigned to claim specialists in Minnesota—the same specialists who allegedly delayed payment pursuant to a company-wide policy that discriminates against racial and ethnic minorities.[3] (Doc. 20 ¶¶ 129–168; Doc. 22-1 ¶¶ 4–7.) The investigations that ensued undoubtedly focused on witnesses and evidence located in Minnesota as well. The eventual reassignment of some claims to an Arizona-based claim specialist did not alter their fundamentally Minnesotan character. It follows, then, that Plaintiffs cannot establish their claims would not have arisen but for State Farm's Arizona-related activities. *Farmers Ins. Exch.*, 907 F.2d at 914.

D. Jurisdictional Discovery

Plaintiffs include, in their opposition brief, a cursory request for jurisdictional discovery if the Court concludes that personal jurisdiction is lacking. (Doc. 24 at 7.) This request will be denied. Although jurisdictional discovery should be permitted where pertinent jurisdictional facts are in dispute, denial is proper "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (citation omitted). Requests "based on little more than a hunch" are rightly denied as well. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Such is the case here. Plaintiffs do not explain, with any specificity, what evidence they expect jurisdictional discovery to produce.

---

[3] State Farm's affidavit notes that one claim specialist "was centralized in State Farm's [Minnesota] office but worked remotely from Wisconsin." (Doc. 22-1 ¶ 4.)

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to dismiss (Doc. 22) is **granted**;

(2) Defendants' prior motion to dismiss (Doc. 18) is **denied as moot**;

(3) Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 27) is **denied as moot**; and

(4) The amended complaint is dismissed without prejudice. The Clerk of Court is directed to enter judgment accordingly and shall terminate this case.

Dated this 17th day of April, 2019.

Dominic W. Lanza
United States District Judge